**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

In re Application of
YS GM MARFIN II LLC;
YS GM MF VII LLC;
YS GM MF VIII LLC;
YS GM MF IX LLC; and
YS GM MF X LLC,

For an Order to Conduct Discovery for

Use in Foreign Proceedings

Case No. M-_____

***EX PARTE* APPLICATION OF YS GM MARFIN II LLC,  YS GM MF VII LLC,
YS GM MF VIII LLC, YS GM MF IX LLC, YS GM MF X LLC
FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782**

YS GM MARFIN II LLC, YS GM MF VII LLC, YS GM MF VIII LLC, YS GM MF IX

LLC, YS GM MF X LLC (each an "Applicant" and, together, the "Applicants"), submit this *Ex

Parte* Application for Judicial Assistance, pursuant to 28 U.S.C. § 1782, in obtaining documentary

evidence for use in a foreign proceeding (the "Application").   In support, the Applicants

respectfully state as follows:

**INTRODUCTION**

1.      This is an *ex parte* application in aid of foreign proceedings involving a brazen

$89.2 million multinational maritime fraud in which Applicants were deceived, assets were

concealed, and false papers were lodged with multiple foreign governments. The fraudsters are

borrowers that pledged sea going merchant cargo ships as loan collateral to Applicants, which are

five special purpose lending vehicles. Concealing the existence of the Applicants' mortgages (by

forging documents and making fraudulent filings to a number of different governmental

authorities), the borrowers sold mortgaged vessels to ship breakers in Bangladesh and Pakistan for

-1-

demolition and conversion into scrap metal, thereby destroying the collateral and pocketing the sale proceeds that the borrowers were contractually required to pay to Applicants. By doing so, the borrowers disregarded that the loan agreements were secured by ship mortgages registered in the Republic of Palau and were subject to assignments of sales proceeds, corporate guarantees, personal guarantees, and pledges of shares. The fraud—and the direct harm stemming from that fraud—is being suffered by thousands of individuals who had invested in the Applicants' funds. In an apparent attempt to conceal the fraud as a mere cash flow insolvency, the holding company of the borrowers put itself into voluntary liquidation in Nevis. However, the liquidator appointed by the Nevis court has thus far ascertained and confirmed that the fraudsters paid the sale proceeds of the mortgaged vessels  to entities other than Applicants. The authorities in multiple jurisdictions have been alerted.  In a Malaysian court, one Applicant (YS GM MF VIII LLC) obtained an order of arrest of a vessel off the coast of Malaysia on March 16, 2020 and in the Commercial Court in London, England, the Applicants obtained a worldwide freezing injunction against the borrowers and loan guarantors in the amount of US $76.7 million. Both proceedings remain subject to applicable response deadlines and further litigation.

2.      Applicants seek assistance from the United States District Court for the Southern District of New York to obtain documentary evidence from The Clearing House Payments Company L.L.C. (the "Clearing House") and thirteen intermediary banks (the "Intermediary Banks"), namely, Bank of America, N.A.; Bank of China; The Bank of New York Mellon; BNP Paribas USA; Citibank, N.A.; Commerzbank AG; Deutsche Bank Trust Company Americas; HSBC Bank USA, N.A.; JPMorgan Chase Bank, N.A.; Societe Generale; Standard Chartered Bank; UBS AG; and Wells Fargo Bank, N.A.. (collectively, the "Discovery Targets"), which reside or are found in this District. Applicants expect the evidence sought will reveal details about the fraud perpetrated by the borrowers,—more specifically the receipt, the transfer, and the

concealment of the sale proceeds of the mortgaged vessels—thus allowing Applicants to prove the existence of the fraud before the foreign courts and to recover the funds wrongfully concealed from Applicants by the fraudsters.

3.      The facts relevant to this Application are set forth below and in the Declaration of Charles Tilden Storrs Buss (the "Declaration"), which is being filed contemporaneously herewith. The facts stated in the Declaration are incorporated herein by reference.

4.      The Clearing House regularly transacts business in this District and operates the Clearing House Interbank Payment System ("CHIPS"), which is a funds-transfer system that processes and maintains records of payment messages between banks.  Decl, ¶ 81. Similarly, the Intermediary Banks are banks that transact business in this District, including as correspondent banks, clearing international U.S. Dollar denominated wire transfers between banks. Decl,, ¶ 81.

5.      The evidence sought through this Application is for use in (i) an ongoing civil proceeding against the owner of the vessel "Wu Xian" filed before the Commercial Court of Malaya at Kuala Lumpur, Malaysia (the "Malaysian Proceeding"); (ii) an ongoing civil proceeding to obtain an *ex parte* worldwide freezing injunction against each of the guarantors  of the loans, as discussed in greater detail below, the effect of which is to prohibit the guarantors from removing assets from the jurisdiction up to the value of US$76.7 million or disposing of assets wherever located up to that value, which is before the Commercial Court of London, England (the "UK Proceeding" and, together with the Malaysian Proceeding, the "Pending Proceedings"); and (iii) other contemplated judicial proceedings to be commenced in London through which the Applicants seek to collect debts owed by various Borrowers (as more specifically identified and defined in the Declaration), Guarantors and the Corporate Guarantor (each as defined below), and other entities and individuals involved in the fraud, arising from numerous defaults and fraudulent acts relating to approximately US$89.2 million in loans (the "Loans") made by the various

Applicants to the Borrowers, including as a result of the Borrowers' surreptitious and fraudulent disposition of numerous vessels that were pledged as security for the Loans (the "Contemplated Proceedings", and together with the Pending Proceedings, the "Pending and Contemplated Proceedings"). See Decl, ¶¶ 71-75.

6.      As more specifically set forth in the Declaration, the Applicants YS GM MARFIN II LLC,  YS GM MF VII LLC, YS GM MF VIII LLC, YS GM MF IX LLC, YS GM MF X LLC, made approximately US$89.2 million in Loans to several companies that are owned and controlled by the Lakhani family—i.e., Mr. Muhammad Tahir Lakhani and his two sons, Ali and Hasan— who are well established within the ship recycling/scrap market. Decl, ¶ 13.

7.      The Loans were made to partially finance the purchase of numerous large vessels by the Borrowers, which were then to be sold for scrap, with the proceeds from such sales being used to pay amounts outstanding under the Loans provided by the referenced Applicants. Decl, ¶ 14-18.

8.      As security for advancing the funds under the Loans, the Applicants (through five (5) separate loan facility agreements) were granted, amongst other things, mortgages over the relevant vessels, personal guarantees from Mr Muhammad Tahir Lakhani and his two sons (Ali and Hasan) (the "Guarantors"), share charges over the borrowing entities and a corporate guarantee from the Lakhani's wholly-owned parent company, North Star Maritime Holdings Ltd. (the "Corporate Guarantor"), a Nevis registered company. Decl, ¶ 22-25.

9.      The Borrowers have breached the various loan facilities (all of which are governed by English law and provide for disputes to be referred to English courts) by, among other things, failing to make payments when due under the Loans; fraudulently selling more than thirteen (13) of the vessels that were pledged as security for the Loans without any disclosure to, authorization

from, and/or payment to the Applicants; and by recently placing the Corporate Guarantor into liquidation in Nevis. Decl, ¶ 30-35.

10.     Notices of acceleration, demand for payment, and termination were sent on March 5, 2020 to the Borrowers, the Guarantors and the Corporate Guarantor. Decl, ¶ 36.

11.     In early February of 2020, and shortly prior to issuing the foregoing notices of acceleration, Applicants received information confirming that numerous vessels covered by of the four (4) facility agreements—i.e., the (i) GENEVA; (ii) ANA; (iii) RON; (iv) ARI; (v) SPIRIT; (vi) BASEL; (vii) AMO; (viii) WAVE; (ix) TEXIS; (x) PROSPER; (xi) BANGSA; and (xii) ATBAN—had been beached/scrapped in Bangladesh without notice to, authorization from, or payment to the Applicants.  Decl, ¶ 48.

12.     Applicants have received similar information confirming that the vessel pledged as collateral for the remaining facility agreement, i.e., the WU XIAN, was also sold without authorization and was destined to be scrapped prior to the intervention of Applicant YS GM MF VIII LLC in the Pending Proceeding. Decl, ¶ 61-65.

13.     The Applicants hold equitable proprietary tracing claims rights with respect to all of the proceeds of above-referenced vessels, which were beached and scraped without regards to the Applicants' mortgage rights under the applicable facility agreements. Decl, ¶ 32.

14.     The Applicants seek information from the Discovery Targets to obtain payment records to or from the Borrowers, the Guarantors, the Corporate Guarantors, and various entities known to form part of the Lakhanis' family enterprise and/or that are known to have been involved in the referenced fraudulent transactions (as more specifically set forth in the Declaration) (the "Fraud"), in support of the Pending and Contemplated Proceedings, which include the Applicants' putative equitable proprietary tracing claims in and to the proceeds of sale and/or any substituted property arising therefrom.  Decl, ¶ 82.

15.     Should the Court grant the Application, Applicants propose to serve the sample subpoenas attached as **Composite Exhibit A** on the Discovery Targets.

16.     As demonstrated below, Applicants meet the statutory requirements under 28 U.S.C. § 1782, and the discretionary factors weigh in favor of granting the relief requested in this Application.

## ARGUMENT

### I.     Standard for Granting Relief

"Section 1782 is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 247 (2004).  Section 1782 "provide[s] for assistance in obtaining documentary and other tangible evidence as well as testimony." Id. at 248.  The statute reads, in pertinent part:

> (a) The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.  By virtue of his appointment, the person appointed has power to administer any necessary oath and take the testimony or statement.  The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing.  To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.  A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a) (2016).

Courts have distilled § 1782's language into a two-part test consisting of a mandatory component and a discretionary component for granting relief. First,

> A district court is authorized to grant a § 1782 request where: (1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign or international tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.

Mees v Buiter, 793 F.3d 291, 297 (2d Cir. 2015); Optimal Inv. Servs., S.A. v. Berlamont, 773 F.3d 456, 460 (2d Cir. 2014); Mare Shipping Inc. v. Squire Sanders (US) LLP, 574 F. App'x 6, 8 (2d Cir. 2014) (summary order); accord Intel, 542 U.S. at 256-63 (addressing the factors).[1]

Next, once a District Court has determined that the mandatory requirements for relief under § 1782 are met, the court is free to grant discovery in its discretion. Mees v Buiter, 793 F.3d at 297. To aid that discretion, the Intel Court delineated the following four factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." Intel, 542 U.S. at 264-65; Mees, 793 F.3d at 298 (reciting factors).

---

[1]     District courts may, and indeed typically do, grant § 1782 on an *ex parte* basis. Gushlak v. Gushlak, 486 F. App'x 215, 217 (2d Cir. 2012) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash [a subpoena] pursuant to Federal Rule of Civil Procedure 45(c)(3).") (citing further authority therein) (summary order).

As demonstrated below, Applicants satisfy the statutory requirements and, therefore, this Court should grant the relief sought in the Application.

## II.    Applicants Meet the Mandatory Requirements for Granting Relief

### A.    The Discovery Target Resides or is Found in This District

The court's authority to compel discovery under § 1782 extends to any "person," including both individuals and entities, that "resides or is found in" the district in which the application is made. 28 U.S.C. § 1782(a). An entity "resides or is found in" this District if this Court can exercise personal jurisdiction over it. See In re del Valle Ruiz, 939 F.3d 520, 528 (2d Cir. 2019) (the "reside or is found" statutory "language extends § 1782's reach to the limits of personal jurisdiction consistent with due process").

Here, this Court has personal jurisdiction over the Discovery Targets because they either have their principal place of business in this District or they are located in and regularly transact business in this District. Decl., ¶ 81. More specifically,

> a.  The Clearing House is headquartered at 1114 Avenue of the Americas, 17th Floor, New York, NY 100036;
>
> b.  Bank of America, N.A. is located and regularly transacts business at 115 W 42nd St, New York, NY 10036;
>
> c.  Bank of China is located and regularly transacts business at 1045 Avenue of Americas, New York, NY 10018;
>
> d.  The Bank of New York Mellon is headquartered at 240 Greenwich Street, New York, NY 10286;
>
> e.  BNP Paribas USA is headquartered at 787 Seventh Avenue New York, NY 10019;
>
> f.  Citibank, N.A. is headquartered at 388 Greenwich Street New York, NY 10013;
>
> g.  Commerzbank AG is located and regularly transacts business at 225 Liberty Street

New York, NY 10281;

h.  Deutsche Bank Trust Company Americas is headquartered at 60 Wall Street New York, NY 10005;

i.  HSBC Bank USA, N.A. is headquartered at 452 Fifth Avenue New York, NY 10018;

j.  JPMorgan Chase Bank, N.A. is headquartered at 270 Park Avenue, New York, NY 10017;

k.  Societe Generale AG is located and regularly transacts business at 245 Park Avenue, New York, NY 10167;

l.  Standard Chartered Bank is located and regularly transacts business at 1095 Avenue of the Americas, New York, NY 1003;

m.  UBS AG is located and regularly transacts business at 1285 Avenue of the Americas, New York, NY 10019; and

n.  Wells Fargo Bank, N.A. is located and regularly transacts business at 500 West 33rd Street, New York, NY 10001.

This Court also has personal jurisdiction over the Discovery Targets because they are located in and transact its relevant business for purposes of this matter—i.e., correspondent banking—in this District, therefore establishing personal jurisdiction over them and satisfying the first mandatory requirement of § 1782. See In re del Valle Ruiz, 939 F.3d 520, 530 (2d Cir. 2019) (a court has specific jurisdiction over a non-party in the § 1782 context if the non-party's activity in the forum is the reason that the evidence sought is available). Decl, ¶ 81.

Accordingly Applicants satisfy the first requirement under § 1782.

**B.**    **The Discovery Sought is For Use in a Proceeding in a Foreign Tribunal**

Likewise, Applicants satisfy the second requirement as the discovery sought through the instant Application is for use in the Pending and Contemplated Proceedings. Decl., ¶ 75. Applicants will use the discovery obtained in this District in support of the Pending and Contemplated Proceedings, including the Applicants' putative equitable proprietary tracing claims in and to the proceeds of sale and/or any substituted property arising therefrom, and in furtherance of collection efforts against the Borrowers, the Guarantors, and the Corporate Guarantor. Id. at ¶¶ 76-79.

In Euromepa, the Second Circuit explained that the "for use in a proceeding in a foreign or international tribunal" factor turns on (1) whether there actually is a foreign proceeding; and (2) whether the foreign proceeding is adjudicative in nature. Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 27 (2d Cir. 1998).

The Second Circuit has also held that a section 1782 application's "for use" requirement is satisfied by showing that the materials the applicant seeks will be used at some stage of a foreign proceeding that is within reasonable contemplation at the time the application is made. Mees, 793 F.3d at 301. The court elaborated "[t]he plain meaning of the phrase "for use in a proceeding" indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail." Mees at 298. The court further noted, "[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chance of success." Id. at 299.

Additionally, Section 1782's "for use" requirement is de minimis. The party seeking discovery need only show that the discovery will "be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015); *In re Veiga*, 746 F. Supp. 2d 8, 18 (D.D.C. 2010) (explaining that the "burden imposed upon an applicant" by the "for use" requirement is "de minimis," and that "district courts need not determine that the

-10-

evidence would actually, or even probably, be admissible in the foreign proceeding"); In re Application Pursuant to 28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L & M Galleries & other non-participants for use in Actions Pending in the Norway, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (characterizing the "for use" requirement as a "broadly permissive standard").

Here, the Malaysian Proceeding is an ongoing foreign proceeding before the commercial court in Malaysia, and it is adjudicative in nature because the Malaysian court will adjudicate on the existence of the Fraud over the Wu Xian, on the validity of the sale of the Wu Xian, and on which entities and individuals participated in the Fraud over the Wu Xian, which will be susceptible to Applicants' recovery measures. Decl., ¶¶ 71, 76. Further, the UK Proceeding is an ongoing foreign proceeding before the commercial court in England, and it is adjudicative in nature because the English court will determine issues relating to the default of the Loans and the liability of the Guarantors under the loan agreements. Decl, ¶ 72-73. Moreover, the Contemplated Proceedings to be filed by Applicants before the English courts are within reasonable contemplation, because Applicants have taken and continue to take concrete steps — such as conducted investigations about (i) the location of the vessels involved in the Fraud, (ii) the entities involved in the Fraud, and (iii) the details on how the Fraud was perpetrated — to proceed with the Contemplated Proceedings. Decl., ¶¶ 29, 33-34, 48-50, 65. In addition, the Contemplated Proceedings are adjudicative in nature, as the English court will adjudicate the existence of the Fraud; which entities and individuals participated in the Fraud and received proceeds from the Fraud as transferees; determine the Applicants' contractual civil claim rights against the Borrowers and the Guarantors; and adjudicate the Applicants' proprietary tracing claim rights against the transferees of the proceeds of the Fraud. Decl., ¶¶ 72, 74. Further, Applicants will be able to use the requested discovery in the Pending and Contemplated Proceedings, as the information will

help Applicants reveal details about how the Fraud was perpetrated, identify the participants of the Fraud and the transferees of the proceeds of the Fraud, and trace and locate the funds diverted through the Fraud, which Applicants will seek to recover through the Pending and Contemplated Proceedings. Decl., ¶¶ 75-78, 82. Thus, Applicants will be able to use the discovery sought in the Pending and Contemplated Proceedings in furtherance of their claims to recover the outstanding amount of the Loans and proceeds from the Fraud.

Therefore, the Pending and Contemplated Proceedings satisfy the second mandatory requirement of § 1782(a).

**C.      Applicants are Interested Persons**

A person who has "participation rights" and "possesses a reasonable interest in obtaining judicial assistance . . . qualifies as an interested person within any fair construction of that term." Intel, 542 U.S. at 256-7 (2d Cir. 2004) (internal citations omitted).  "The legislative history to § 1782 makes plain that 'interested person' includes a party to the foreign litigation."  See Lancaster Factoring Co. Ltd. v. Mangone, 90 F.3d 38, 42 (2d Cir. 1996) (internal citations omitted). Here, each Applicant is an "interested person" in its capacity as either a claimant in the Pending Proceedings and/or as a putative claimant in the Contemplated Proceedings. Decl., ¶¶ 71-74. Hence, the Applicants meet the third statutory requirement under 28 U.S.C. § 1782(a).

**III.    This Court Should Exercise its Discretion in Favor of Granting Relief**

As noted above, once the District Court has determined that the mandatory requirements for relief under § 1782 are met, the Court is free to grant discovery in its discretion. Optimal Inv. Servs., S.A., 773 F.3d at 460.[2] Additionally, that discretion must be guided by the twin policy aims

---

[2]      The four factors guiding that discretion again are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," because the "need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant"; (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial

of § 1782: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.  <u>Brandi-Dohrn v. IKB Deutsche Industriebank AG</u>, 673 F.3d 76, 81 (2d Cir. 2012). Here, these discretionary factors weigh in favor of granting the requested relief.

First, the Discovery Targets are not parties to the Pending Proceedings. Moreover, there is no expectation that the Discovery Targets will be parties to the Pending or Contemplated Proceedings. Decl., ¶ 83-85.  Accordingly, this factor weighs in favor of granting the Application. <u>See</u> <u>Intel</u>, 542 U.S. at 264 ("the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad.").

Second, counsel retained in the Pending and Contemplated Proceedings have advised that there is no indication that the courts in Malaysia or England would not be receptive to the documentary evidence sought through the instant Application.  Decl., ¶ 86. Even if the documents were not used as evidence in those proceedings, the Second Circuit has held that Section 1782(a) contains no requirement that particular evidence be admissible in a foreign proceeding to be considered "for use in a proceeding in a foreign or international tribunal." <u>Brandi-Dohrn</u>, 673 F.3d at 77.

Third, counsel retained in the Pending and Contemplated Proceedings have advised the Applicants that the evidence sought through the instant Application would likely be admissible and does not otherwise circumvent any proof-gathering restrictions in Malaysia or England. Decl., ¶ 86.

Lastly, this Application is not unduly intrusive or burdensome. The proposed requests to the Discovery Targets, demonstrated in the sample subpoenas attached as **<u>Composite Exhibit A</u>**,

---

assistance"; (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the Unites States"; and (4) whether the request is otherwise "unduly intrusive or burdensome." <u>Intel</u>, 542 U.S. at 264-65.

are limited to (i) the period beginning with June 01, 2018—i.e., date that the first Loan Agreement was entered into—to the present and/or to the Discovery Target's applicable document and/or information retention period, and (ii) the period beginning from September 01, 2019—i.e., from the escrow agent Holman Fenwick Willan Singapore LLP's receipt of funds relating to the purchase of the Wu Xian—to the present.  Finally, the information sought is the type of evidence that the Discovery Targets regularly retrieve and produce as  third parties or actual parties in litigation. Decl., ¶ 87.

As such, each discretionary factor identified by the Intel Court weighs in favor of granting the Application.

WHEREFORE, Applicants respectfully request that this Court enter an Order, in the proposed, or substantially similar, form as the accompanying Proposed Order:

(a)  exercising its discretion, pursuant to 28 U.S.C. § 1782, and granting this *Ex Parte* Application for Judicial Assistance;

(b)  granting the Applicants leave to conduct discovery pursuant to the Federal Rules of Civil Procedure, including, but not limited to, leave to serve the subpoenas, in substantially the same form as the sample subpoenas attached as Composite Exhibit A to this Application;

(c)  reserving jurisdiction to grant Applicants leave to serve follow-up subpoenas on any other person or entity as may be necessary to obtain the evidence described in the Application; and

(d)  granting such other and further relief as this Court deems just and proper.

April 3, 2020

Respectfully submitted,

_ /s/ Andrew J. Melnick _____
Andrew J. Melnick (AM4209)
MURPHY & MCGONIGLE
1185 Avenue of the Americas, 21st Flr
New York, New York 10036
(212) 880-3999

and

SEQUOR LAW, P.A.
1111 Brickell Ave., Ste. 1250
Miami, Florida 33131
(305) 372-8282
(305) 372-8202 (fax)
Edward H. Davis, Jr.
Florida Bar No. 704539
Fernando J. Menendez, Jr.
Florida Bar No. 0018167
Raul Torrao
Florida Bar No. 1018991

*Requests for Admission Pro Hac Vice (to be submitted)*

*Counsel for the Applicants*