UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re Application of:
YS GM MARFIN II LLC;
YS GM MF VII LLC;
YS GM MF VIII LLC;
YS GM MF IX LLC; and
YS GM MF X LLC,

For an Order to Conduct Discovery
for Use in Foreign Proceedings.

**ORDER**

20 Misc. 182 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a proceeding pursuant to 28 U.S.C. § 1782 for discovery in aid of foreign

proceedings.

        On June 2, 2020, Applicants YS GM MARFIN II LLC, YS GM MF VII LLC, YS

GM MF VIII LLC, YS GM MF IX LLC, and YS GM MF X LLC ("Applicants") filed an ex

parte application to issue subpoenas directing Four Wood Marine Advisors, Global Marine

Transport Capital, LLC, and Four Wood Capital Partners, LLC, to produce documents and

provide testimony for use in foreign proceedings.  (Dkt. No. 9)  On June 3, 2020, Judge Caproni

granted that application.  (Dkt. No. 14)

        On June 4, 2020, subpoenas were issued to Four Wood Marine Advisors, Global

Marine Transport Capital, LLC, and Four Wood Capital Advisors, LLC.  (Dkt. No. 34-2)

Applicants have now moved to compel Four Wood Marine Advisors, Global Marine Transport

Capital, LLC, and Four Wood Capital Partners, LLC ("Respondents") to comply with these

subpoenas.  (Motion to Compel (Dkt. No. 31))

        For the reasons stated below, Applicants' motion will be granted.

## BACKGROUND

### I.  FOREIGN PROCEEDINGS

Applicants are five special purpose lending vehicles that, beginning in June 2018, issued five loans, totaling $89.2 million, to fifteen Dubai-based companies that are wholly-owned subsidiaries of North Star Maritime Holdings Limited ("North Star"). North Star is owned and controlled by Muhammad Ali Lakhani, Muhammad Hasan Lakhani, and Muhammad Tahir Lakhani (the "Lakhanis"). (Buss Decl. (Dkt. No. 32) ¶ 4; Buss Decl. (Dkt. No. 9-1) ¶¶ 7-9, 12) The loans were used to partially finance the purchase of large cargo ships, which were to be sold for scrap, with proceeds to be used to pay the loans. (Buss Decl. (Dkt. No. 9-1) ¶ 13) The loans were secured by mortgages on the cargo ships, and by guarantees provided by the Lakhanis and North Star. (Buss Decl. (Dkt. No. 32) ¶ 5; Buss Decl. (Dkt. No. 9-1) ¶¶ 21-24, 27)

Applicants entered into an "Investment Management Agreement" with Four Wood Capital Partners, LLC – a U.S.-based private equity fund manager with offices in New York – and its affiliate company Four Wood Capital Advisors, LLC. (Buss Decl. (Dkt. No. 32) ¶ 6; Buss Decl. (Dkt. No. 9-1) ¶ 11)[1] According to Applicants, Four Wood Capital Partners, LLC and Four Wood Capital Advisors, LLC "acted through" Four Wood Marine Advisors[2] and Global Marine Transport Capital, LLC in effecting this agreement. (Applicants Reply Br. (Dkt. No. 38) at 13) Under this agreement, the Four Wood entities "act[ed] as the Applicants' agents, responsible for all due diligence, structuring and negotiation of terms conditions and loan covenants, vetting and selection of all service providers, preparation and execution of loan

---

[1] The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

[2] Respondents state that "Four Wood Marine Advisors is an internal naming convention used by Four Wood Capital Advisors, LLC for organizational purposes to assist in the designation of certain projects, and [is] not a legal entity." (Isquith Decl. (Dkt. No. 36) ¶ 3)

documents, insurances, ongoing mortgage servicing and collateral monitoring servicing

activities, and . . . directly communicating with the Lakhanis." (Buss Decl. (Dkt. No. 32) ¶ 6;

Buss Decl. (Dkt. No. 9-1) ¶ 11)

In 2019, the Lakhanis and the companies they controlled "sold the underlying

collateral to be demolished and scrapped without repaying the mortgages . . . , defaulted on their

loan facilities . . . , and concealed their actions by providing false information . . . and concealing

their assets from Applicants." (Buss Decl. (Dkt. No. 32) ¶ 7; Buss Decl. (Dkt. No. 9-1) ¶¶ 29-

58)

On April 3, 2020, Applicants and Yieldstreet Marine Finance LLC ("YS Marine")

commenced an action (the "London Lakhani Action") before the High Court of Justice Queen's

Bench Division Commercial Court in London (the "Commercial Court") to collect on the debt

owed by the Lakhanis pursuant to the loans provided by Applicants. (Buss Decl. (Dkt. No. 32) ¶

8) On October 5, 2020, the Commercial Court entered a judgment against the Lakhanis for

approximately $76.7 million plus interest. (Id. ¶ 9; id., Ex. A (Judgment in YS GM MARFIN II

LLC et al. v. Muhammad Ali Lakhani et al., Case No. CL-2020-000192))

On February 5, 2021, Applicants and YS Marine commenced an action "against a

number of London insurance underwriters" in the Commercial Court. This action (the "London

Insurance Action") arises out of insurance policies Applicants obtained to provide coverage in

the event that the underlying collateral for the loans was sold without repayment of the loans.

The insurance underwriters denied Applicants' insurance claims, arguing that Applicants had not

shown that the underlying collateral was sold without the authorization of Applicants' agents.

(Buss Decl. (Dkt. No. 32) ¶¶ 14-18)

## II.  **PROCEEDINGS IN THIS DISTRICT**

On April 3, 2020, Applicants initiated the instant proceeding (the "Section 1782 Proceeding") to obtain evidence for use in foreign proceedings, pursuant to 28 U.S.C. § 1782. (Dkt. No. 1)[3]  As relevant here, on June 2, 2020, Applicants filed a third application (the "Third Application"), seeking leave to serve subpoenas (the "Subpoenas") on Four Wood Marine Advisors, Global Marine Transport Capital, LLC, and Four Wood Capital Partners, LLC to obtain documentary and testimonial evidence regarding the alleged fraud perpetrated by the Lakhanis.  (Third Application (Dkt. No. 9) ¶¶ 1, 3, 5, 17)  Attached to the application were subpoenas for Four Wood Marine Advisors and Global Marine Transport Capital, LLC, as well as for Four Wood Capital Advisors, LLC – an entity not mentioned in the Third Application. (Dkt. No. 9-2)  Applicants attached no subpoena for Four Wood Capital Partners, LLC.

Applicants' Third Application cites to the London Lakhani Action and a proceeding brought by Applicant YS GM MF VIII LLC in Malaysia regarding the same subject matter.  (Third Application (Dkt. No. 9) ¶ 8)  According to the Third Application, Four Wood Marine Advisors, Global Marine Transport Capital, LLC, and Four Wood Capital Partners, LLC served as "financial and transactional intermediar[ies] with the Lakhanis and their affiliated entities."  (Third Application (Dkt. No. 9) ¶ 20)

On June 3, 2020, Judge Caproni – to whom the instant case was initially assigned – granted Applicants' Third Application.  (Dkt. No. 14)  On June 12, 2020, Applicants served the

---

[3]  On April 28, 2020, Applicants and YS Marine filed a complaint in this District against Four Wood Capital Partners, LLC and Four Wood Capital Advisors, LLC alleging breach of contract, breach of fiduciary duty, negligent misrepresentation, and negligence.  See YS GM Marfin II LLC et al. v. Four Wood Capital Advisors, LLC et al., 20 Civ. 3320 (PGG), Cmplt. (Dkt. No. 1). This case ("the SDNY Action") was assigned to this Court.  Defendants have moved to dismiss. YS GM Marfin II LLC, 20 Civ. 3320 (PGG), (Dkt. Nos. 54-61).

above-described subpoenas on Four Wood Marine Advisors, Global Marine Transport Capital, LLC, and Four Wood Capital Advisors, LLC (the "Subpoena Recipients"). (Dkt. No. 34-1) The return date for the subpoenas <u>duces tecum</u> was June 16, 2020 (Dkt. No. 34-2), but the parties subsequently agreed to an extension until June 30, 2020. (Melnick Decl. (Dkt. No. 34) ¶ 6) The subpoenas seek documents and testimony regarding "all credit, financial or other commercial transactions involving . . . any Lakhani Company. . . ." (Subpoenas <u>Duces Tecum</u> (Dkt. No. 34-2) at 8, 22, 36; Subpoenas <u>Ad Testificandum</u> (Dkt. No. 34-3) at 5, 16, 27)

On June 30, 2020, Respondents served Applicants with their responses and objections to the Subpoenas. (Melnick Decl. (Dkt. No. 34) ¶ 7; <u>id.</u>, Ex. 4 (Dkt. No. 34-4)) In their objections, Respondents assert that (1) the subpoenas are an improper attempt to obtain discovery in the SDNY Action; (2) Applicants violated Local Rule 1.6 by not advising this Court of the Section 1782 Proceeding; (3) service of the subpoenas was not proper; (4) Respondents are not proper discovery targets under Judge Caproni's order; and (5) the subpoenas are overly broad and burdensome. (<u>Id.</u>, Ex. 4 (Dkt. No. 34-4))

In July 2020, the Section 1782 Proceeding was re-assigned to this Court.

## III.   <u>APPLICANTS' MOTION TO COMPEL</u>

On December 8, 2020, Applicants filed a pre-motion letter seeking a conference to address Respondents' non-compliance with the subpoenas. (Dec. 8, 2020 Applicants Ltr. (Dkt. No. 26)) In that letter, Applicants state that a judgment was issued in the London Lakhani Action, and that they seek discovery for "post-[j]udgment proceedings to trace the [Lakhanis'] disposition of the loan proceeds and [to] collect the amounts ordered."[4] (<u>Id.</u> at 2)

---

[4] Applicants further report that, in the Malaysia action, one of the Applicants obtained the arrest of a vessel owned by the Lakhanis. (Dec. 8, 2020 Applicants Ltr. (Dkt. No. 26) at 1-2)

In a December 11, 2020 letter, Respondents contend that Applicants' Third Application was improvidently granted, and that "if the § 1782 petition is recast," discovery should be limited to "judicial adjudicative proceedings specified to this Court." (Dec. 11, 2020 Resp. Ltr. (Dkt. No. 27) at 1) This Court set a briefing schedule for Applicants' motion to compel. (Dkt. No. 30)

In their motion to compel, Applicants report the filing of the London Insurance Action, and state that they seek, inter alia, "correspondence between the [Four Wood] entities and [North Star]" in order to show that the Lakhanis sold the underlying collateral without the Four Wood entities' consent. (See Buss Decl. (Dkt. No. 32) ¶¶ 14-19)

## DISCUSSION

### I.   LEGAL STANDARD

Section 1782(a) provides that

> [t]he district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a).

Section 1782 authorizes district courts to grant such relief only where (1) "the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made"; (2) "the discovery is for use in a proceeding before a foreign

tribunal"; and (3) "the application is made by a foreign or international tribunal or 'any interested

person.'" Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 83 (2d Cir. 2004)

(internal quotation marks, citations, and alterations omitted).

        "'[O]nce the statutory requirements are met, a district court is free to grant

discovery in its discretion.'" Id. at 83-84 (quoting In re Metallgesellschaft AG, 121 F.3d 77, 78

(2d Cir. 1997)) (alteration in Schmitz); see In re Edelman, 295 F.3d 171, 181 (2d Cir. 2002)

("Congress planned for district courts to exercise broad discretion over the issuance of discovery

orders pursuant to § 1782(a) – both over whether to grant a discovery order and, if so, what

limits to place on that discovery." (citing S.Rep. No. 88-1580, § 9, reprinted in 1964

U.S.C.C.A.N. at 3788)).  "This discretion, however, is not boundless.  Rather, . . . 'district courts

must exercise their discretion under § 1782 in light of the twin aims of the statute:  providing

efficient means of assistance to participants in international litigation in our federal courts and

encouraging foreign countries by example to provide similar means of assistance to our courts.'"

Schmitz, 376 F.3d at 84 (quoting In re Malev Hungarian Airlines, 964 F.2d 97, 100 (2d Cir.

1992)) (internal quotation marks omitted).

        In exercising their discretion, district courts should consider

(1)    [w]hether the documents or testimony sought are within the foreign
        tribunal's jurisdictional reach, and thus accessible absent § 1782 aid;

(2)    [t]he nature of the foreign tribunal, the character of the proceedings
        underway abroad, and the receptivity of the foreign government or the
        court or agency abroad to U.S. federal-court judicial assistance;

(3)    [w]hether the § 1782 request conceals a[n] attempt to circumvent foreign
        proof-gathering restrictions or other policies of a foreign country or the
        United States; and

(4)    [w]hether the subpoena contains unduly intrusive or burdensome requests.

In re Warren, No. 20 MISC. 208 (PGG), 2020 WL 6162214, at *5 (S.D.N.Y. Oct. 21, 2020)

(citing In re Microsoft Corp., 428 F. Supp. 2d 188, 192-93 (S.D.N.Y. 2006) and Intel Corp. v.

Advanced Micro Devices, Inc., 542 U.S. 241, 264-65 (2004)).

      "A court considering a request for discovery under § 1782 must also be mindful

of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil

Procedure." In re Auto-Guadeloupe Investissement S.A., No. 12 MC 221 (RPP), 2012 WL

4841945, at *4 (S.D.N.Y. Oct. 10, 2012); see In re Gushlak, No. 11 MC 218 (NGG), 2011 WL

3651268, at *6 (E.D.N.Y. Aug. 17, 2011) ("Section 1782(a) mandates that discovery under the

statute be produced 'in accordance with the Federal Rules of Civil Procedure.' Accordingly, the

court is guided by Rules 26 and 45, which govern third-party discovery."), aff'd sub nom.

Gushlak v. Gushlak, 486 F. App'x 215 (2d Cir. 2012).

      In the context of a motion to compel, the movant has the burden of

"demonstrating that the information sought is relevant to the subject matter of the pending

action." United States v. Int'l Bus. Machines Corp., 66 F.R.D. 215, 218 (S.D.N.Y. 1974).

"Once relevance has been shown, it is up to the responding party to justify curtailing discovery."

Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 284 F.R.D. 132, 135 (S.D.N.Y. 2012)

(internal quotation marks and citations omitted).

## II.    ANALYSIS

### A.    Whether the Statutory Factors Are Satisfied

      As to the three statutory factors, only one is in dispute:  whether the discovery

sought is "for use" in a foreign proceeding.[5]  In analyzing this factor, courts consider "(1)

---

[5] Four Wood Capital Partners, LLC, Four Wood Capital Advisors, LLC, and Global Marine
Transport Capital, LLC, all reside in this District (Buss Decl. (Dkt. No. 9-1) ¶¶ 11, 76, 79), and
Applicants are clearly "interested persons" within the meaning of Section 1782.

whether a foreign proceeding is adjudicative in nature; and (2) whe[ther] there is actually a foreign proceeding." Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 27 (2d Cir. 1998).

Respondents argue that the London Lakhani Action is not adjudicative in nature because the Commercial Court entered a final judgment in October 2020, and only the collection of that judgment remains. (Resp. Opp. (Dkt. No. 33) at 14-19)  In support of this argument, Respondents cite Euromepa, in which the Second Circuit held that a French bankruptcy proceeding was not adjudicative in nature after a final judgment in a related civil fraud action had been entered, and "'the already extant judgment [wa]s merely being enforced.'" (Id. at 15 (quoting Euromepa, 154 F.3d at 28))

Applicants counter that Euromepa does not announce a "broad ban" on Section 1782 assistance in connection with post-judgment enforcement proceedings. (Applicants Reply Br. (Dkt. No. 38) at 9-11 (citing Union Fenosa Gas, S.A. v. Depository Tr. Co., 20 Misc. 188 (PAE), 2020 WL 2793055 (S.D.N.Y. May 29, 2020) ("Union Fenosa I"); In re Unión Fenosa Gas., S.A., 20-MC-171 (PKC), 2020 WL 3446871 (S.D.N.Y. June 23, 2020) ("Union Fenosa II"); In re Gorsoan Ltd., 435 F. Supp. 3d 589 (S.D.N.Y. 2020)); see also Applicants Br. (Dkt. No. 35) at 15-18)  They also distinguish cases that Respondents rely on, some of which involve pre-judgment attachment proceedings not at issue here. (See Applicants Reply Br. (Dkt. No. 38) at 11 (citing In re Al-Attabi, 21-MC-207 (VSB), 2021 WL 4027021 (S.D.N.Y. Sept. 3, 2021)))

The Court concludes that the post-judgment proceedings in the London Lakhani Action are adjudicative in nature. As Applicants argue, there is no blanket ban on Section 1782 assistance in connection with post-judgment proceedings. See, e.g., Union Fenosa I, 2020 WL 2793055, at *4. Instead, whether a given proceeding is adjudicative in nature is determined on a case-by-case basis, with "close attention [paid] to the foreign proceeding" to determine whether

the discovery sought "'will be employed with some advantage or serve some use in the [foreign] proceeding.'" Id. (quoting In re Accent Delight Int'l Ltd., 869 F.3d 121, 132 (2d Cir. 2017)).

For example, in Union Fenosa I and Union Fenosa II, two judges in this District concluded that a post-judgment proceeding to enforce an arbitration award in an English court was adjudicative in nature. Union Fenosa I, 2020 WL 2793055, at *1; Union Fenosa II, 2020 WL 3446871, at *4. Judge Engelmayer concluded that the post-judgment attachment proceeding at issue in Union Fenosa I was adjudicative in nature because one of the potential enforcement remedies was a "third party debtor order" ("TPDO"), in which an English court would determine whether "the targeted assets are executable under English law." Union Fenosa I, 2020 WL 2793055, at *5. Judge Engelmayer also noted that other potential enforcement remedies may "involve factfinding or adjudication by the English tribunal." Id.

In Union Fenosa II, Judge Castel adopted this reasoning, finding that the English court proceeding would be "adversarial [in] that [it would] include[] judicial scrutiny of a TPDO application and a potential hearing . . . . [and would] not merely [be] administrative in nature." Union Fenosa II, 2020 WL 3446871, at *4.[6]

Here, Applicants contend that the London Lakhani Action is adjudicative in nature because they

> are contemplating such steps like an application under Civil Procedure Rules ("CPR") Part 71, under which a judgment creditor may make an application to the Commercial Court for an order requiring the judgment debtor(s) to attend a court hearing in which the judgment debtor(s) will be questioned about the location of their assets. For such a procedure to be worthwhile, Applicants need as much information as possible to question the debtors over. Another method of enforcing Applicants' Judgment is a third party debt

---

[6] Respondents point out that Union Fenosa I was vacated on consent. (Resp. Opp. (Dkt. No. 33) at 16-17 (citing Union Fenosa I, 20 Misc. 188 (PAE), 2021 U.S. Dist. LEXIS 20735, at *1 (S.D.N.Y. Feb. 3, 2021)). The Second Circuit's vacatur does not, of course, address the merits of the case or Judge Engelmayer's reasoning. Moreover, the reasoning of Union Fenosa I was adopted in Union Fenosa II.

order ("TPDO").  A TPDO is an application under CPR Part 72 for a Commercial Court order directing a third party to pay to the judgment creditor the amount of any debt due or accruing to the judgment debtor from that third party.  Similarly, Applicants would need to know as much as possible about the Lakhanis' assets in order to seek a TPDO.

(Buss Decl. (Dkt. No. 32) ¶ 13; Applicants Br. (Dkt. No. 35) at 18-19; Applicants Reply Br.

(Dkt. No. 38) at 11)

      Accordingly, the Court concludes that, as in <u>Union Fenosa I</u> and <u>Union Fenosa II</u>,

the contemplated proceedings in London will not be merely "administrative," as they will

involve a court hearing or judicial review of a TPDO application.  Applicants have thus

demonstrated that the discovery they seek "will be employed with some advantage or serve some

use in [a foreign proceeding]."  <u>In re Accent Delight</u>, 869 F.3d 132.[7]

---

[7] Applicants contend that the London Insurance Action provides an independent basis for granting Section 1782 relief, and that the London Insurance Action was "contemplated" in the Third Application.  (Applicants Br. (Dkt. No. 35) at 19; Applicants Reply Br. (Dkt. No. 38) at 11-13)  In support of this argument, Applicants cite to a catch-all provision in the Third Application stating that Applicants seek discovery for "other contemplated proceedings arising out of or in relation to the underlying facts set forth herein that are the subject of the foreign proceedings."  (Applicants Reply Br. (Dkt. No. 35) at 12 (citing Third Application (Dkt. No. 9) ¶ 8))

Although the London Insurance Action is an adjudicative proceeding (<u>see</u> Buss Decl. (Dkt. No. 32) ¶¶ 16-19), it was not "reasonabl[y] contemplat[ed]" at the time Applicants' Third Application was granted, and therefore cannot be the basis for granting Applicants' motion to compel.  <u>See Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.</u>, 798 F.3d 113, 123-24 (2d Cir. 2015) ("[T]he applicant must have more than a subjective intent to undertake some legal action, and instead must provide some objective indicium that the action is being contemplated . . . . [and] that the contemplated proceeding is more than just a twinkle in counsel's eye.").  The catch-all provision cited by Applicants provides no objective evidence that an insurance action was contemplated at the time.  <u>See Mangouras v. Squire Patton Boggs</u>, 980 F.3d 88, 101 (2d Cir. 2020) (private criminal action against three witnesses who allegedly gave false testimony was not reasonably contemplated because application did not provide legal theory for such a proceeding or otherwise provide a factual basis for a claim against witnesses who had given false testimony); <u>In re Kuwait Ports Auth.</u>, No. 1:20-MC-00046-ALC, 2021 WL 5909999, at *8 (S.D.N.Y. Dec. 13, 2021) (winding-up proceeding was reasonably contemplated where Section 1782 application stated that applicant had retained counsel to prepare the necessary pleadings, and application articulated the theories that would form the basis for a winding-up proceeding).  The proceedings that were pending at the time the Third Application

The recently issued decision in <u>Fed. Republic of Nigeria v. VR Advisory Servs.,</u>
<u>Ltd.</u>, 25 F.4th 99, 2022 WL 557575 (2d Cir. Feb. 24, 2022) supports this conclusion.  In that
case, the Second Circuit makes clear that there is no categorical bar to Section 1782 relief in
connection with post-judgment proceedings.  Citing <u>Euromepa</u>, the district court had ruled that
the applicants – who sought vacatur of an arbitration award on grounds of fraud – had not made
"any showing" as to how a post-judgment proceeding in England was adjudicative in nature.  <u>See</u>
<u>Fed. Republic of Nigeria v. VR Advisory Servs., Ltd.</u>, 499 F. Supp. 3d 3, 10-11 (S.D.N.Y.
2020); <u>see also id.</u> at 11 n.3 ("Applicants have not set out facts about the nature and operation of
the English proceeding that might qualify it as an 'adjudicative proceeding' within the meaning
of § 1782.  Nor have they identified supportive case law . . . .").

   In reversing, the Second Circuit found that

> the district court misread <u>Euromepa</u> to the extent that it understood that case to hold that
> the mere completion of an initial adjudication of a dispute categorically disqualifies a
> foreign proceeding under § 1782's statutory "proceeding" requirement.  <u>Euromepa</u> was
> fundamentally a case about mootness, at least in the practical sense.  We held that there
> was no longer a qualifying "proceeding" under the statute because the French equivalent
> of our <u>res judicata doctrine</u> prevented the French bankruptcy court from reconsidering the
> underlying merits of the dispute, and thus the discovery sought in the United States was
> no longer of any use in the matter for which it was originally sought.
>
> . . . . [Here,] [t]he English Court, unquestionably a foreign tribunal, has scheduled a
> trial, a quintessential adjudicative proceeding, to determine the merits of a contention that
> an arbitral award should be vacated as fraudulently obtained, a recognized judicial
> function in this country as well as in the United Kingdom. . . .  We have no doubt,
> therefore, that . . . such a request would satisfy the statutory requirements.

---

was filed – in England and in Malaysia – were not directed at insurers and were premised on
legal theories different than those set forth in the London Insurance Action.  <u>Cf.</u> <u>In re Hornbeam</u>
<u>Corp.</u>, 722 F. App'x 7, 9 (2d Cir. 2018) (in finding that proceeding was reasonably
contemplated, court noted that applicant "previously brought two related actions in the [British
Virgin Islands] against [the same entity] and represented that it intended to initiate further
litigation once it obtained additional information").

Fed. Republic of Nigeria, 2022 WL 557575, at *15.  In short, Fed. Republic of Nigeria makes clear that there is no categorical bar to obtaining Section 1782 relief in connection with a post-judgment proceeding.[8]

This Court concludes that the discovery Applicants seek is "for use" in a foreign proceeding.[9]

**B.   Whether the Discretionary Factors Are Satisfied**

In determining whether to exercise its discretion to grant Applicants' motion to compel, this Court must consider the four factors set forth in Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241 (2004).[10]

---

[8] Jiangsu S.S. Co. v. Success Superior Ltd., 2015 U.S. Dist. LEXIS 18388 (S.D.N.Y. Jan. 5, 2015) and In re MT "Baltic Soul" Produktentankschiff-Ahrtsgesellschaft mbH & Co. KG, 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ("In re Baltic Soul") – cited by Respondents (Resp. Opp. (Dkt. No. 33) at 16) – are not persuasive here because they turn on a view that Euromepa broadly bans Section 1782 relief in connection with post-judgment proceedings.  See Jiangsu, 2015 U.S. Dist. LEXIS 18388, at *9 ("[N]either pre-judgment attachment nor post-judgment enforcement proceedings are 'adjudicative' in nature; indeed, the latter is the explicit holding of Euromepa, and if an enforcement proceeding is not adjudicative in nature, I fail to see (and Jiangsu does not suggest) how a pre-judgment security proceeding could possibly so qualify.  Therefore, as long as Euromepa remains good law, the request for this particular form of discovery should be denied."); see also id. at *16 ("[A] post-judgment enforcement proceeding, if that is the sort of proceeding contemplated by Jiangsu, is exactly the sort of proceeding for which Euromepa held that § 1782 discovery is unavailable."); In re Baltic Soul, 2015 WL 5824505, at *2 ("[T]he discovery Petitioners seek [in relation to a contemplated post-judgment action] is precluded by the Second Circuit's decision in Euromepa . . . .").

In re Al-Attabi, No. 21-MC-207 (VSB), 2021 U.S. Dist. LEXIS 167922, at *5-6 (S.D.N.Y. Sep. 3, 2021) – also cited by Respondents (Resp. Opp. (Dkt. No. 33) at 17) – is not on point, given that it addresses a pre-judgment attachment proceeding.

[9] The Court also notes that, at the time Judge Caproni granted the Third Application and the Subpoenas were issued, the requested discovery would clearly have been "for use" in the London Lakhani Action, because no final judgment had yet been entered.  (See Applicants Br. (Dkt. No. 35) at 15 n.3)  Respondents should not be rewarded for their nearly two years of non-compliance with the Subpoenas.

[10] Applicants contend that this Court should not consider Respondents' arguments in opposition to the motion to compel, because Respondents did not file a motion to quash.  (Applicants Br. (Dkt. No. 35) at 14-15; Applicants Reply Br. (Dkt. No. 38) at 14)  But Respondents filed their

###### 1.    Whether the Evidence Sought Is Within the Jurisdictional Reach of the English Courts

Under the first <u>Intel</u> factor, courts consider "[w]hether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid." <u>In re Warren</u>, 2020 WL 6162214, at *4 (internal quotation marks and citations omitted); <u>see also Intel</u>, 542 U.S. at 264 ("[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. In contrast, nonparticipants in foreign proceedings may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." (citations omitted)).

Respondents argue that this factor favors denying Applicants' motion, because "Four Wood [Capital Partners, LLC and Four Wood Capital Advisors, LLC are] defendant[s] in the preexisting domestic [SDNY Action], and the need for assistance outside of the [SDNY Action] is not apparent because in [that action] discovery could (and should) be sought in accordance with the [rules of this Court]." (<u>See</u> Resp. Opp. (Dkt. No. 33) at 20; <u>id.</u> at 19 ("[Applicants] should not be permitted premature discovery which is contrary to the Rules of this Court and the §1782 goal of efficiency.")).

Respondents have conflated the first <u>Intel</u> factor – which addresses whether the evidence sought is within the jurisdictional reach of the foreign tribunal – with the third <u>Intel</u>

---

objections to the Subpoenas by the agreed-upon return date (<u>see</u> Melnick Decl. (Dkt. No. 34) ¶ 7, Ex. 4), and the parties engaged in extensive negotiations concerning the Subpoenas prior to the motion to compel (<u>id.</u> ¶¶ 8-11; Isquith Decl. (Dkt. No. 36) ¶¶ 8-16). Given these circumstances, this Court will address the merits of Respondents' arguments.

factor, which addresses whether the Section 1782 application is an attempt to circumvent discovery rules in the United States or elsewhere. Because Respondents have not shown that the documents Applicants seek are within the jurisdictional reach of the English courts, analysis of the first factor favors granting Applicants' motion.

### 2. Whether the English Courts Would Be Receptive to Judicial Assistance from this Court

Under the second Intel factor, courts consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel, 542 U.S. at 264.

Respondents contend that the "future [foreign] proceedings" are "unspecified and unknowable," and that accordingly, "[t]here is no way for the Court to evaluate" this factor. (Resp. Opp. (Dkt. No. 33) at 20) But this Court has identified the London Lakhani Action, for which discovery would be of assistance. Moreover, Respondents have not provided any basis for this Court to conclude that English courts would not be receptive to this Court's assistance. Accordingly, the second factor favors granting Applicants' motion.

### 3. Whether the Application Constitutes an Attempt to Circumvent Discovery Restrictions in the United States

Under the third Intel factor, courts "consider whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel, 542 U.S. at 265.

Respondents contend that the Subpoenas and Applicants' motion are efforts to "circumvent[] the ordinary course of discovery under the rules and procedures" applicable to the SDNY Action. (Resp. Opp. (Dkt. No. 33) at 20; see also id. at 7 ("Applicants' Subpoenas and Motion are an improper attempt to obtain premature discovery from Four Wood for use in their

[SDNY Action] against Four Wood, or any other domestic proceeding including before the federal agencies investigating [Applicants], or any new state proceeding."))  According to Respondents, during negotiations regarding the Subpoenas, Applicants have "insisted" on using discovery obtained pursuant to Section 1782 "for other domestic judicial proceedings or government investigations," and have "refused to carve out" such uses of the discovery materials in a protective order.  (Resp. Opp. (Dkt. No. 33) at 12, 20)

Applicants respond that they "are willing to not use any produced discovery from this [Section 1782] proceeding in the [SDNY Action]" (Applicants Br. (Dkt. No. 35) at 21 n.6), but that "they will not agree to a broad restriction on the use of discovery in any future proceeding, other than in the [SDNY Action], because [Judge Caproni's o]rder specifically provides for the use of documents in the Contemplated Proceedings, without a geographical restriction" (Applicants Reply Br. (Dkt. No. 38) at 7 (emphasis omitted)).

In connection with the third Intel factor, courts consider whether the application is brought in good faith.  In re Batbold, No. 21-MC-218 (RA) (OTW), 2021 WL 4596536, at *4 (S.D.N.Y. Oct. 6, 2021) (noting that "a court's analysis of [the third] factor hinges on whether a petitioner is pursuing discovery in bad faith" (citation omitted)); see also In re Accent Delight, 869 F.3d at 135 ("[P]arties concerned in a particular case that a Section 1782 applicant is attempting to use foreign litigation as a ruse for obtaining discovery for use in other foreign proceedings can and should bring evidence of such chicanery to the Section 1782 court's attention.  Should such evidence exist, it could provide good cause for entry of a protective order prohibiting use of the discovery in other proceedings . . . and might support denying the Section 1782 application altogether." (internal quotation marks, citations, and alterations omitted)).

Here, Respondents argue that Applicants' "refus[al]" to limit the use of the requested discovery in other proceedings "provide[s] ample grounds for denying the Application." (Resp. Opp. (Dkt. No. 33) at 20 (citation omitted))  However, Applicants' refusal to agree to a litany of restrictions that Respondents wish to place on any discovery obtained pursuant to Section 1782 does not provide a basis for this Court to deny Applicants' motion to compel.[11]  "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise." In re Accent Delight Int'l Ltd., 869 F.3d at 135.  And the mere fact that Applicants have refused to agree to a multitude of restrictions proposed by Respondents does not demonstrate that Applicants are acting in bad faith, and does not warrant the denial of Applicants' motion. See In re Al-Attabi, No. 21MC207VSBRWL, 2022 WL 229784, at *9 (S.D.N.Y. Jan. 26, 2022) ("[P]ovided the statutory and discretionary criteria are satisfied, . . . a Section 1782 application should not be denied merely because the discovery material may have potential other uses by the petitioner." (citation omitted)); Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd., 785 F. Supp. 2d 434, 439 (S.D.N.Y. 2011) (finding that "the fact that [the applicant] may also be able to use the discovery in future litigation against the respondents is immaterial" to decision to grant application).[12]

---

[11]  As noted above, Applicants have agreed not to use the requested discovery in the SDNY Action.  But Respondents have demanded that Applicants agree to a host of other restrictions, including "(1) limiting Applicants' use of the requested discovery to the Pending Proceedings; (2) allowing the [Four Wood] Entities to classify any discovery as 'Attorneys' Eyes Only'; (3) barring Applicants from using any discovery produced by the [Four Wood] Entities in any future domestic litigation or any administrative or investigative proceeding without notice to the [Four Wood] Entities; and (4) Applicants waiving their right to depose the [Four Wood] Entities." (Melnick Decl. (Dkt. No. 34) ¶ 10; Melnick Decl. (Dkt. No. 37) ¶¶ 3-5, Exs. A-C; see also Isquith Decl. (Dkt. No. 36) ¶¶ 8-16, Exs. 2-3)

[12]  Respondents also contend that (1) Applicants were dilatory in notifying this Court of the related Section 1782 proceeding, in violation of Local Rule 1.6 (Resp. Opp. (Dkt. No. 33) at 21-

Analysis of the third Intel factor favors granting Applicants' motion.[13]

### 4.    Whether the Subpoena Requests Are Unduly Intrusive or Burdensome

The final Intel factor requires a court to consider "[w]hether the subpoena contains unduly intrusive or burdensome requests." In re Warren, 2020 WL 6162214, at *5 (citing In re Microsoft Corp., 428 F. Supp. 2d at 193 and Intel, 542 U.S. at 264-65).

Respondents argue that Applicants' requests are "overbroad and unduly burdensome." (Resp. Opp. (Dkt. No. 33) at 21)  Respondents contend that the subpoenas should be "narrowly construed" consistent with Applicants' original requests in the Third Application and in proportion to the needs of the case.  (Id. at 24 ("The requested information is not proportional to the needs of the case.  The subpoenas' definition of the "Lakhani Company" included at least 68 discrete legal entities (as well as their subsidiaries and affiliates) – the

---

23); and (2) Applicants' "justification for the subpoenas is constantly shifting" (id. at 8-10 (capitalization omitted)).  Neither of these arguments supports a finding of bad faith. Although this Court only received notice of the instant action on June 30, 2020 – nearly a month after Judge Caproni's June 3, 2020 order granting Applicants' Third Application (see YS GM Marfin II LLC, 20 Civ. 3320 (PGG), June 30, 2020 Def. Ltr. (Dkt. No. 14) – Judge Caproni was aware of the SDNY Action when she granted the Third Application (see Third Application (Dkt. No. 9) ¶ 21).  The delay in notifying this Court of the instant action did not prejudice Respondents in any way, nor did it "obstruct[] the effective administration of the Court's business."  See Local Rule 1.6(b).

As to Respondents' complaint that Applicants have presented "shifting" justifications to the Court for the relief they seek, the change in Applicants' arguments merely reflects the developments that have taken place since the June 3, 2020 order granting the Third Application. During that time, the London Lakhani Action resulted in a judgment, and Applicants filed a new action against their insurers.  There is no evidence of bad faith.

[13] In re McCormack, No. MC 20-56, 2020 WL 2992501 (E.D. Pa. June 4, 2020), cited by Respondents (Resp. Opp. (Dkt. No. 33) at 19-20) provides no support for their position here.  In McCormack, the applicant sought discovery for a declaratory judgment action in Canada in the hopes that the judgment obtained in Canada would reduce their liability in a related civil action in the United States.  McCormack, 2020 WL 2992501, at *2.  The SDNY Action is not similarly dependent on the judgment obtained in the London Lakhani Action.  There are no overlapping defendants and the legal claims are distinct.

majority of whom Respondents 'did not conduct business with,' or only did so on behalf of clients that have no role in either action.  Further, the information requested is irrelevant and stale, making the request even less proportional." (citations omitted)))  Respondents also argue that any costs for compliance should be paid for by Applicants, noting the requested production is estimated to "take more than 300 hours."  (Id. at 24; id. at 25 ("Yield Street is a sophisticated hedge fund with significant financial and human resources, reporting more than $1.9B of capital invested through its platform.  Conversely, Four Wood is a small investment management firm." (footnote omitted)))

Applicants respond that their requests "are limited, seeking documents only related to the [Lakhanis] from January 1, 2018 to the present" and that "it is not unduly burdensome to produce the documents that the [Respondents] were paid to keep."  (Applicants Br. (Dkt. No. 35) at 20, 23)  Applicants also note that Respondents "have never submitted anything to substantiate their alleged burden or any estimate of their costs [and have] failed to provide Applicants with any results of any searches for responsive documents."  (Applicants Reply Br. (Dkt. No. 38) at 6; see also id. at 14)

In considering the fourth Intel factor, courts "'assess whether the discovery is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of Civil Procedure.'"  Union Fenosa I, 2020 WL 2793055, at *7 (quoting Mees v. Buiter, 793 F.3d 291, 302 (2d Cir. 2015)).  In general, "it is far preferable for a district court to reconcile whatever misgivings it may have about the impact of its participation in the foreign litigation by issuing a closely tailored discovery order rather than by simply denying relief outright."  Id. (quoting Mees, 793 F.3d at 302).

Here, Respondents have not demonstrated that Applicants' requests are intrusive or unduly burdensome.

In sum, analysis of all four <u>Intel</u> factors indicates that Applicants' motion to compel should be granted.

**C.**   **<u>Whether the Subpoenas Were Properly Directed to Respondents</u>**

Respondents also argue that the subpoenas were not properly directed to them because the entities listed in the Third Application (Dkt. No. 9) and the order granting that application (Dkt. No. 14) do not match the entities listed in the subpoenas (Dkt. Nos. 34-2 and 34-3). (Resp. Opp. (Dkt. No. 33) at 23)  The Third Application and the June 3, 2020 order list Four Wood Marine Advisors, Global Marine Transport Capital, LLC, and Four Wood Capital Partners, LLC as the discovery targets, while the subpoenas reference Four Wood Marine Advisors, Global Marine Transport Capital, LLC, and Four Wood Capital Advisors, LLC. (Resp. Opp. (Dkt. No. 33) at 23)

As set forth below, Global Marine Transport Capital, LLC and Four Wood Marine Advisors will produce the requested documents within one week of this Order.  Any necessary testimony from representatives of these entities will take place within two weeks of this Order.  To the extent that Respondents contend that Four Wood Marine Advisors is not a legal entity (Resp. Opp. (Dkt. No. 33) at 23), Applicants assert that Four Wood Capital Partners, LLC and Four Wood Capital Advisors, LLC "acted through" Four Wood Marine Advisors (Applicants Reply Br. (Dkt. No. 38) at 13) -- a fact that Respondents do not dispute (Isquith Decl. (Dkt. No. 36) ¶ 3).  Accordingly, Four Wood Marine Advisors will obey the subpoenas.

As to Four Wood Capital Partners, LLC, Judge Caproni approved the Third Application as to Four Wood Capital Partners, LLC (Dkt. No. 14), but the subpoenas that were

attached to this order and subsequently served on Respondents were directed to Four Wood

Capital Advisors, LLC (Dkt. Nos. 9-2 and 34-1 through 34-3).  By March 4, 2022, Applicants

will file a corrected subpoena in the name of Four Wood Capital Partners, LLC, which this Court

will "so order."[14]

## CONCLUSION

Applicants' motion to compel is granted.  By **March 4, 2022**, Applicants will

submit a corrected subpoena referencing Four Wood Capital Partners, LLC.  The Court will "so

order" that corrected subpoena.  Global Marine Transport Capital, LLC, Four Wood Marine

Advisors, and Four Wood Capital Partners, LLC will produce the documents sought in

Applicants' motion to compel by **March 9, 2022**.  Any necessary testimony will be taken by

**March 16, 2022**.  Applicants' request for oral argument (Dkt. No. 42) is denied as moot.  The

Clerk of Court is directed to terminate the motions (Dkt. Nos. 26, 31).

Dated: New York, New York
        March 2, 2022

SO ORDERED.

_Paul G. Gardephe_
Paul G. Gardephe
United States District Judge

---

[14]  Respondents assert that (1) service of the Subpoenas was ineffective because Respondents were only given one day to respond; and (2) the subpoenas ad testificandum do not comply with Fed. R. Civ. P. 45(b)(1), because Applicants did not "tender[] the fees for 1 day's attendance and the mileage allowed by law."  (Resp. Opp. (Dkt. No. 33) at 25-26)  Although the original return date of the subpoenas duces tecum was one business day, the parties subsequently agreed to extend the date by an additional fifteen days. (Melnick Decl. (Dkt. No. 34) ¶ 6; Isquith Decl. (Dkt. No. 36) ¶ 5)  There is therefore no basis to deny Applicants' motion because of the return date. As to Applicants' alleged non-compliance with Rule 45(b)(1), that does not provide a basis for denying the instant motion to compel.